# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Troso R. Harris, ) | |
| ) | Civil Action No.: 4:18-cv-00001-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Before the court for review is the Magistrate Judge's Report and Recommendation ("Report") filed on October 5, 2018 (ECF No. 18). The Report addresses Plaintiff Troso R. Harris's ("Plaintiff") claim for supplemental security income ("SSI") and recommends that the court affirm the decision of the Commissioner of Social Security Administration ("the Commissioner"). (ECF No. 18 at 1, 34.) For the reasons stated herein, the court **ACCEPTS** the Report, incorporating it herein, and **AFFIRMS** the decision of the Commissioner.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation. (ECF No. 18 at 1–18.) As background, Plaintiff filed an application for SSI on March 12, 2012, which was denied initially and upon reconsideration. (*Id.* at 1.) After a hearing on May 23, 2014, an Administrative Law Judge ("ALJ") issued an unfavorable decision against Plaintiff on August 4, 2014. (*Id.*) The ALJ determined that Plaintiff did not have "an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in . . . 20 C.F.R. §§ 416.920(d), 416.925, and 416.926." (ECF No. 6-4 at 48.) Additionally, the ALJ found that Plaintiff possessed the residual functional capacity

1

("RFC") "to perform light work as defined in 20 C.F.R. § 416.967(b)." (*Id.* at 26.) Specifically, the ALJ found that Plaintiff could "lift or carry up to 20 pounds occasionally and 10 pounds frequently" and "stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8-hour workday with normal breaks." (*Id.* at 51.) The ALJ further found Plaintiff was "limited to frequent pushing or pulling with the left lower extremity, no ladders, ropes or scaffolds, frequent climbing, occasional stooping, frequent balancing, kneeling, crouching and crawling and frequent handling." (*Id.*) The ALJ determined Plaintiff "must avoid concentrated exposure to fumes, odors, dust and unventilated environments and hazards" and was "limited to simple work with one to two-step tasks." (*Id.*) After considering Plaintiff's RFC, age, education, and work experience, the ALJ determined that there were "jobs that exist in significant numbers in the national economy that [Plaintiff could] perform." (*Id.* at 62.) On this basis, the ALJ denied SSI to Plaintiff because she was not disabled for purposes of the Social Security Act ("the Act"). (*Id.* at 63.)

Plaintiff requested review of the ALJ's decision by the Appeals Council ("the Council"), which the Council granted on December 10, 2015. (*Id.* at 74.) The Council remanded the matter for further evaluation of Plaintiff's "borderline intellectual functioning in accordance with the special technique described in 20 CFR [§] 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR [§] 416.920a(c)." (*Id.* at 74–75.) After a second hearing on December 2, 2016, the ALJ issued another unfavorable decision against Plaintiff on March 20, 2017. (ECF No. 6-2 at 48.) The ALJ determined that Plaintiff did not have "an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in . . . 20 C.F.R. §§ 416.920(d), 416.925, and 416.926." (*Id.* at 30.) Additionally, the ALJ found that

2

Plaintiff possessed the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b) except frequently push/pull with the left lower extremities, frequently handle, never climb ropes/ladders/scaffolds, occasionally stoop, and frequently climb steps/ramps, balance, kneel, crouch, and crawl." (*Id.* at 36.) The ALJ determined Plaintiff "must avoid concentrated exposure to hazards and fumes" and could "perform unskilled SVP 1 and SVP 2[1] work tasks on a sustained basis 5 days a week, 8-hours a day in 2-hour increments for a total of 8-hours with normal breaks in a low stress work environment defined as non-production/non fast-paced work." (*Id.*) After considering Plaintiff's RFC, age, education, and work experience, the ALJ again determined that there were "jobs that exist in significant numbers in the national economy that [Plaintiff could] perform." (*Id.* at 47.) On this basis, the ALJ denied SSI to Plaintiff because she was not disabled for purposes of the Social Security Act. (*Id.* at 48.)

Plaintiff requested a second review of the ALJ's decision by the Council, which the Council granted, and issued its own decision on November 30, 2017. (*Id.* at 11.) Plaintiff argued the ALJ's RFC determination and the Council's proposed findings did not comport with "*Mascio v. Colvin* and South Carolina case law interpreting the same" and did not account for all of Plaintiff's limitations. (*Id.* at 5.) Plaintiff also argued that the ALJ's and the Council's "findings at Step 5 of the Sequential Evaluation Process[2] conflict[ed] with the direct testimony of the vocational expert

---

[1] "The Dictionary of Occupational Titles ('DOT') classifies a given job, in part, by its Specific Vocational Preparation Level ('SVP') — which the DOT defines as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and develop the facility needed for average performance of a particular position." *Trish v. Berryhill*, No. 3:17CV15 (REP), 2018 WL 846943, at *7 (E.D. Va. Jan. 26, 2018).

[2] The Commissioner uses a five-step process for evaluating claims for disability benefits. 20 C.F.R. § 404.1520(a)(4); *Hancock v. Astrue*, 667 F.3d 470, 472–73 (4th Cir.2012). The Commissioner asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the

3

[("VE")] based on [Plaintiff]'s first grade reading level." (*Id.* at 6.) Lastly, Plaintiff argued the Council "should find that the [ALJ] committed reversible error as a matter of law in failing to weigh the opinions of the state examiners Drs. Thompson and Loring as required under Social Security Rules and Regulations." (*Id.*)

The Council "considered the arguments made by [Plaintiff], but f[ound] they d[id] not provide a basis for changing the [ALJ's] decision" and that Plaintiff was "not eligible for [SSI] payments under . . . the Social Security Act." (*Id.* at 6, 11.) As to the RFC, the Council found

> the assessed [RFC] finding [by the ALJ] does contain specific vocational terms to accommodate for [Plaintiff]'s moderate limitation in concentration, persistence or pace: unskilled SVP 1 and SVP 2 work tasks on a sustained basis (5 days a week, 8 hours a day in 2-hour increments for a total of 8 hours with normal breaks) in a low stress environment defined as non-production/non fast paced work.

(*Id.* at 5.) As to Step 5 of the Sequential Evaluation Process, the Council found "[a] review of the record reveals that the claimant's literacy abilities are above the first grade reading level," and listed several examples from the record, including Plaintiff's completion of specialized training in food service and industrial sewing in 1991. (*Id.* at 6.) Finally, as to the ALJ's failure to weigh the opinion of Dr. Thompson, the Council found the ALJ "did not commit reversible error as a matter of law because the opinion from [Dr.] Thompson . . . is dated October 20, 2005, which is remote in time and dates well before the claimant's amended alleged onset date of disability, April 28, 2009." (*Id.*) As to the ALJ's failure to weigh the opinion of Dr. Loring, the Council found the ALJ's "failure to weigh the opinion of Dr. Loring does not constitute an error of law because Dr.

---

requirements of a "listed" impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy. *Hancock*, 667 F.3d at 472–3. The claimant has the burden of production and proof at Steps 1–4. *Id.*

*Radford v. Colvin*, 734 F.3d 288, 290–91 (4th Cir. 2013).

4

Loring's psychological assessment [wa]s a one-time examination, which is not indicative of [Plaintiff's] long-term intellectual functioning," and "the evidence of record demonstrates that [Plaintiff] has literacy abilities above the first grade reading level." (*Id.*) The Council also adopted the ALJ's (1) "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration [("SSA")] Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable"; and (2) "findings or conclusions regarding whether the claimant is disabled." (*Id.* at 6–7.) The Council did not agree with the ALJ's "finding that [Plaintiff] has a severe intellectual disability which did not meet or medically equal the severity of Listing 12.05." (*Id.* at 7.) Instead, the Council found that Plaintiff "has a severe impairment of learning disorder (borderline intellectual functioning), but it does not meet or medically equal the severity of Listing 12.11." (*Id.* at 8.) The Council's decision became the final decision of the Commissioner. (*Id.* at 2.) *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision.").

Plaintiff filed the instant action on January 2, 2018, seeking judicial review of the Commissioner's final decision. (ECF No. 1.) To this court, Plaintiff asserted essentially the same errors that she raised before the Council: (1) the Commissioner committed reversible error by failing to weigh the opinions of Drs. Thompson and Loring; (2) the Commissioner "committed reversible error in failing to account for [Plaintiff]'s first grade reading level in his RFC as espoused to the VE, despite clear and irrefutable findings that such was the case. This failure resulted in a further error at Step Five of the Sequential Process"; and (3) the Commissioner "erred in failing to fully account for the Plaintiff's moderate limitations in concentration, persistence, and/or pace in her RFC." (ECF No. 12 at 6–8, 11.)

5

On October 5, 2018, the Magistrate Judge entered the Report. (ECF No. 18.) As to whether the Commissioner committed reversible error by failing to weigh the opinions of Drs. Thompson and Loring, the Magistrate Judge noted that the ALJ's decision cited to Dr. Thompson's examination several times, and that any error in not weighing Dr. Thompson's examining opinion from 2005 was harmless. (*Id.* at 22.) The Magistrate Judge's harmless-error finding was based on Dr. Thompson's opinion being made "under a previously adjudicated period and not pertaining to the amended alleged onset date nearly four years later" and indication by the ALJ that he "considered Dr. Thompson's one-time examination . . . in relation to the whole record and to examinations taken under a more relevant time period." (*Id.*) As to Dr. Loring, who was retained by Plaintiff for an examination, the Magistrate Judge found any error in failing to weigh Dr. Loring's examination was also harmless because "it is clear from the record that the ALJ and the Appeals Council decisions considered the examination and compared it to other testing in the record and to other evidence of Plaintiff's abilities that rose above Dr. Loring's findings." (*Id.* at 25.) As to whether the Commissioner's RFC comported with *Mascio*, the Magistrate Judge found "[t]he RFC determination as explained by the RFC narrative is supported by substantial evidence. While this court in several cases has remanded cases based on *Mascio* where the ALJ did not explain the RFC in relation to CPP concerns, the ALJ here provided [an] explanation based on medical evidence supporting [what] the RFC found." (*Id.* at 31.) Finally, as to whether the ALJ failed to account for Plaintiff's first-grade reading level in his RFC determination and at step five of the Sequential Process, the Magistrate Judge found that "the ALJ fully considered the issue of literacy and cited to substantial evidence to support his finding." (*Id.* at 33.) The Magistrate Judge noted that "Plaintiff has pointed to contradictions in the record," but stated "it is not within this court's purview to consider whether the evidence met the regulation's definition of illiteracy. Such

6

a finding was the ALJ's to make and the ALJ's finding is supported by a thorough discussion of substantial evidence . . . ." (*Id.*) Accordingly, the Magistrate Judge recommended affirming the Commissioner's decision. (*Id.* at 34.) The parties were apprised of their opportunity to file specific objections to the Report by October 19, 2018. (ECF No. 18-1.)

Plaintiff filed an Objection to the Report on October 9, 2018. (ECF No. 20.) First, as to the opinions of Drs. Thompson and Loring, Plaintiff argues "the Magistrate Judge overlooks the thrust of . . . Plaintiff's contention, that the ALJ and the Appeals Council had an affirmative duty under the regulations and administrative rulings to weigh all opinions of record." (*Id.* at 1.) Plaintiff contends the error in failing to weigh these opinions was not harmless because they "directly addressed the major issue in the case, whether or not Plaintiff was able to adapt to other work that existed in the national economy." (*Id.* at 3.) Next, Plaintiff asserts the Magistrate Judge erred in finding that the ALJ adequately considered Plaintiff's moderate limitations in concentration, persistence, or pace in assessing her RFC because "nowhere does [the ALJ] specifically outline his reasoning for failing to include any limitations on concentration, persistence, and pace in Step Four of the Sequential Analysis, despite moderate findings of the same at Step Three of the Sequential Analysis." (*Id.* at 4.) Plaintiff notes that the ALJ did not "directly issue any restriction with respect to Plaintiff's ability to stay on task and attend to the work a sustained basis for an eight (8) hour workday as the South Carolina [c]ourts have consistently required." (*Id.* at 5.) Finally, Plaintiff objects to the Magistrate Judge finding "the ALJ properly considered the issue of literacy." (*Id.* at 6.) Plaintiff contends the Magistrate Judge missed her "entire position," which "is not that she is illiterate, but rather that she has a first grade reading level." (*Id.*) Plaintiff asserts that "every evaluation that [she] underwent from examining consultative examiners yielded a finding that she had a first grade reading level," and that the ALJ

7

"simply cannot substitute his lay opinion for that of a licensed medical professional." (*Id.*) Accordingly, Plaintiff requests that the court reject the Report and reverse the Commissioner's decision. (*Id.* at 7.) The Commissioner filed a Response to Plaintiff's Objection on October 18, 2018. (ECF No. 22.)

## II. STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making de novo determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). While the court is free to conduct a de novo review of the Report, the court's review of the Commissioner's final decision is "limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). When assessing whether the ALJ possessed substantial evidence, the court may not "re-weigh

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). As such, the court is tasked with a "specific and narrow" review under the Act. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### III. DISCUSSION

#### A. Plaintiff's First Objection: Failure to Weigh Medical Opinions

Under the Social Security Administration's Treating Physician Rule, "the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians." *Cohen v. Berryhill*, 272 F. Supp. 3d 779, 781 (D.S.C. 2017) (citing 20 C.F.R. § 404.1545). This "regulation . . . imposes a duty on the Commissioner to 'evaluate every medical opinion [the Commissioner] receive[s].'" *Id.* (citing 20 C.F.R. § 404.1527(c)). Plaintiff objects to the Magistrate Judge's finding that the Commissioner's failure to weigh the opinions of Drs. Thompson and Loring, in accordance with the Treating Physician Rule, was harmless. (ECF No. 20 at 1–3.)

When faced with an error by the ALJ, if the record is sufficient to conclude that substantial evidence supported the ALJ's denial of benefits, the court may affirm for harmless error. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017) ("Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error." (citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)));[3] *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011))). *See also Mascio v.*

---

[3] In *Shineski v. Sanders*, the United States Supreme Court found "[l]ower court cases make clear that courts have correlated review of ordinary administrative proceedings to appellate review of civil cases in this respect. Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." 556 U.S. 396, 409 (2009). The Court further explained that,

9

*Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) ("The ALJ's error would be harmless if he properly analyzed credibility elsewhere."); *Garner v. Astrue*, 436 F. App'x 224, 226 (4th Cir. 2011) ("Accordingly, Garner has failed to show that he was harmed by the ALJ's drafting error." (citing *Shinseki*, 556 U.S. at 409))). Therefore, "[t]he relevant question under this harmless error inquiry is whether the ALJ's failure to weigh or consider [Drs. Thompson's and Loring's] opinions materially affected the disability determination."[4] *Bennett v. Colvin*, No. 2:13CV189, 2014 WL 1603737, at *9 (E.D. Va. Apr. 21, 2014).

Initially, the court recognizes that the ALJ did not expressly state what weight it assigned to the opinions of Drs. Thompson and Loring, even though the ALJ did make such statements for the other medical opinions in the record. (*See* ECF No. 6-2 at 43–46.) However, this does not

---

> To say that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement. In ordinary civil appeals, for example, the appellant will point to rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence. Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary. The party seeking to reverse the result of a civil proceeding will likely be in a position at least as good as, and often better than, the opposing party to explain how he has been hurt by an error.

*Id.* at 410.

[4] Although the decision of the Council is the final decision of the Commissioner (ECF No. 6-2 at 5-11), the Council adopted the ALJ's (1) "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable"; and (2) "findings or conclusions regarding whether the claimant is disabled." (*Id.* at 6–7.) Therefore, the ALJ's findings, which were considered and reviewed by the Magistrate Judge, will also be considered and reviewed by the court.

mean the ALJ did not *consider* the opinions of Drs. Thompson and Loring. *See Cohen*, 272 F. Supp. 3d at 781 ("[T]he Commissioner is obligated to *consider* all medical evidence and the opinions of medical sources, including treating physicians." (emphasis added) (citing 20 C.F.R. § 404.1545)). As the Magistrate Judge noted, "The ALJ's opinion cited to Exhibit B5F, which is Dr. Thompson's examination," and Exhibit B43F, which is Dr. Loring's opinion, "several times," (ECF No. 18 at 21), and rejected their conclusions based on other facts in the record. (*See, e.g.*, ECF No. 6-2 at 32, 34, 45.) For example, the ALJ stated,

> While the record reflects that [Plaintiff]'s cognitive functioning is in the intellectual deficient range, she has been assessed with a reading/learning disorder, and reading skills suggest she is illiterate (*Exs B5F*, B40F and *B43F*); nonetheless, she has a valid driver's license and is able to drive herself independently to run errands such as grocery shopping, going to medical appointments, and pick up prescription medications (Ex B13E and B22F).

(ECF No. 6-2 at 32 (emphasis added).) Thus, as the Magistrate Judge found, any error in failing to weigh the opinions of Drs. Thompson and Loring was harmless because "[t]he ALJ did indicate consideration of Dr. Thompson's one-time evaluation . . . in relation to the whole record and to examination taken under a more relevant time period," and "considered [Dr. Loring's] examination and compared it to other testing in the record and to other evidence of Plaintiff's abilities that rose above Dr. Loring's findings." (ECF No. 18 at 22, 25.) *See also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding "the ALJ's consideration of the medical evidence was more than adequate" even though "the ALJ did not expressly consider" a physical therapist's report); *Morgan v. Barnhart*, 142 F. App'x 716, 722–23 (4th Cir. 2005) ("Even assuming, however, that this opinion is a medical opinion due special weight under the treating-physician rule, any error in failing to credit this opinion was harmless.") Accordingly, the court overrules Plaintiff's first objection.

   **B. Plaintiff's Second Objection: *Mascio v. Colvin***

Generally, an ALJ's RFC assessment must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Woodlief v. Berryhill*, No. 5:16-CV-00191-FL, 2017 WL 4164076, at *3 (E.D.N.C. Sept. 20, 2017) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). In *Mascio*, the United States Court of Appeals for the Fourth Circuit held that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the RFC to simple routine tasks or unskilled work. *See Mascio*, 780 F.3d at 638; *McCornell v. Berryhill*, No. CV 1:17-2761-SVH, 2018 WL 2244620, at *10 (D.S.C. May 16, 2018) ("This court has interpreted the Fourth Circuit's holding in *Mascio* to emphasize that an ALJ must explain how he considered the claimant's limitation in concentration, persistence, or pace in assessing his RFC."). The Fourth Circuit declined to adopt "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). However, the court did state that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or whether other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

Plaintiff objects to the Magistrate Judge's finding that the ALJ adequately considered Plaintiff's moderate limitations in concentration, persistence, or pace in assessing her RFC because "nowhere does [the ALJ] specifically outline his reasoning for failing to include any limitations on concentration, persistence, and pace in Step Four of the Sequential Analysis, despite moderate findings of the same at Step Three of the Sequential Analysis." (*Id.* at 4.) The Magistrate Judge found, "The ALJ here explained, *by use of the record*, how the RFC accounted for the previously found moderate limitations in concentration and how [the RFC] did not require further limitations

12

to account for the previously found moderate limitations in concentration, persistence, and pace." (ECF No. 18 at 27 (emphasis added).) The court agrees.

First, the RFC, in and of itself, accounts for Plaintiff's moderate limitations; for example, the ALJ found Plaintiff could only work in 2-hour increments (concentration), in a low stress environment (persistence), doing non fast-paced work (pace). (ECF No. 6-2 at 36.) But the ALJ did not stop there, he went on to explain how the RFC accounted for Plaintiff's limitations using the record. For example, the ALJ stated,

> In terms of [Plaintiff]'s alleged anxiety, depression, learning disorder and intellectual disorder, I found [Plaintiff]'s various mental impairments "severe" and limited her work activities to simple, routine, SVP1 and SVP 2 work tasks in a low stress work environment, defined as non-production work. However, the record as a whole does not support disabling mental impairments. . . . .
>
> As previously detailed, although [Plaintiff] admittedly has intellectual deficits and is prescribed medication for depression; nonetheless, the longitudinal evidence indicates involvement in a variety of activities that are consistent with her ability to perform simple, routine work tasks in a low stress environment. She lives in her family home with her son and admits to handling the household chores. . . . Although she reports limited reading and writing abilities and relies on help from family and her friends in completing paperwork, she acknowledges that she has been the Representative Payee for her son's disability benefit for over 10-years, which requires that she affirmatively tell SSA that she can manage the funds in the best interest of the beneficiary.

(*Id.* at 40–43.) The ALJ also discussed medical opinions in the record, and at the end of his review, the ALJ expressly stated that "the longitudinal record supports the finding that [Plaintiff] has severe mental impairments *which I have accounted for* in restricting [Plaintiff] to simple, routine work in a low stress environment." (*Id.* at 46 (emphasis added).) Accordingly, "as demonstrated above by the ALJ's narrative concerning the RFC, the medical evidence weighed and considered by the ALJ supported a lack of translation of the moderate difficulty in [concentration, persistence, and pace ('CPP')] into a further limitation in the RFC regarding CPP." (ECF No. 18 at 31.) *See Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The

instant case is distinguishable from *Mascio* because, here, the ALJ did more than limit Plaintiff to simple, routine tasks or unskilled work; the ALJ limited her to 'simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact.' (Tr. 18, 23). Accordingly, the ALJ's finding specifically addressed Plaintiff's ability to stay on task as required by *Mascio*. The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact. (Tr. 18). Therefore, the ALJ's nonexertional RFC finding sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence and pace and is not grounds for remand."). Accordingly, the court overrules Plaintiff's second objection.

### C. Plaintiff's Third Objection: Literacy

Plaintiff's third and final objection is to the Magistrate Judge's finding that "the ALJ properly considered the issue of literacy." (ECF No. 20 at 6.) Plaintiff contends the Magistrate Judge missed her "entire position," which "is not that she is illiterate, but rather that she has a first grade reading level." (*Id.*) Plaintiff asserts that "every evaluation that Harris underwent from examining consultative examiners yielded a finding that she had a first grade reading level," and that the ALJ "simply cannot substitute his lay opinion for that of a licensed medical professional." (*Id.*)

In *Lewis v. Berryhill*, the Fourth Circuit admonished ALJs about "improperly 'playing doctor' in contravention of the requirements of applicable regulations." 858 F.3d 858, 869 (4th Cir. 2017). *See also Cohen v. Berryhill*, 272 F. Supp. 3d 779, 782 (D.S.C. 2017) ("Administrative law judges are further prohibited from substituting their medical opinions for those of medical providers, which the Fourth Circuit recently referred to as the prohibited practice of the ALJ

14

'playing doctor.'" (citing *Lewis*, 858 F.3d at 869)). However, the ALJ in this case did no such playing. Contrary to Plaintiff's claim, the ALJ did more than find Plaintiff is not illiterate under the SSA's regulations; the ALJ also found that Plaintiff "can read or write a simple message such as instructions or inventory lists," based on Plaintiff's testimony about engaging in activities like caring for her two-year old grandson and managing the finances of her elderly parents. (ECF No. 6-2 at 46–47.) Furthermore, throughout the ALJ's decision, he cited evidence from the record that he found showed Plaintiff's reading ability was better than indicated by her test scores and own testimony.[5] For example, the ALJ noted that "when [Plaintiff] filed for disability benefits in 2009, she indicated that although she was in special education, she could read and understand English and write more than her name in English." (*Id.* at 46.) Furthermore, in determining Plaintiff's RFC, the ALJ found that "[a]lthough [Plaintiff] reports limited reading and writing abilities and relies on help from family and her friend in completing paperwork, she acknowledges that she has been the Representative Payee for her son's disability benefits for over 10-years, which requires that she affirmatively tell SSA that she can manage the funds in the best interests of the beneficiary." (*Id.* at 42.) Although "Plaintiff has pointed to contradictions in the record," (ECF No. 18 at 33), as the Magistrate Judge found, these contradictions do not require reversal because "[i]n reviewing for substantial evidence, we do not undertake to *reweigh conflicting evidence*,

---

[5] As to Plaintiff's performance on intellectual testing the ALJ found,

> the longitudinal evidence of [the] record fail[s] to support any marked limitations in adaptive functioning[.] [I]t is noted that the pain that [Plaintiff] appeared to be experiencing could have distracted her to the point that it interfered with her performance to a certain degree and her true intellectual level might be somewhat higher than these scores indicate.

(ECF No. 6-2 at 40.) The Council made a similar finding: "the evidence of record demonstrates that [Plaintiff] has literacy abilities above the first grade reading level." (*Id.* at 6.)

15

make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (emphasis added) (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)). As demonstrated above, throughout the ALJ's opinion, he supported his findings as to Plaintiff's reading ability with substantial evidence from the record. (*See* ECF No. 6-2 at 40–47.) Accordingly, the court overrules Plaintiff's third objection.

## IV. CONCLUSION

After a thorough review of Plaintiff's Objection (ECF No. 20) and the Magistrate Judge's Report (ECF No. 18), the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 18), incorporating it herein, and **AFFIRMS** the decision of the Commissioner of Social Security Administration.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 19, 2019
Columbia, South Carolina